IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA WEST,                      )
                                    )
            Plaintiff,              )
                                    )
      v.                            )    C.A. No. 05-561
                                    )
LINCOLN BENEFIT LIFE COMPANY,       )    Chief Judge Ambrose
                                    )    Magistrate Judge Hay
            Defendant.              )

REPORT AND RECOMMENDATION

I.    RECOMMENDATION

It is respectfully submitted that the plaintiff's Motion for
Partial Summary Judgment (doc. 22) be denied and the defendant's
Motion for Summary Judgment (doc. 23) be granted.

II.   REPORT

The plaintiff, Patricia West ("Plaintiff" or "Mrs. West"),
commenced this action in state court as a third-party beneficiary
of a life insurance policy issued by the defendant, Lincoln
Benefit Life Company ("Lincoln Benefit"), to plaintiff's now
deceased husband, James West, Jr. ("Mr. West"), to recover death
benefits in accordance with the terms of the policy and damages
on a claim of bad faith.  The defendant removed the action to
this court and plaintiff subsequently filed an Amended
Complaint.[1]    The record demonstrates that Mr. West obtained a

---

[1]    At Count I, the plaintiff avers that by reason of Lincoln
       Benefit's failure to provide Mr. West with notice that
       coverage would stop, as required by the grace period
       provision of the Policy, the Policy remained in full force
       and effect.  At Count II, the plaintiff claims that if
       coverage was properly terminated upon failure to pay the
       premium due, coverage was reinstated prior to Mr. West's

life insurance policy from the Allstate Life Insurance Company

("Allstate"), effective April 4, 1998.[2]  Subsequently, Mr. West

elected a term conversion of the Allstate policy and replaced it

with a policy issued by Lincoln Benefit, effective February 1,

2002 (the "Policy").[3]  The Policy named Mrs. West as the primary

beneficiary and was issued for a face amount of $50,000 and a

Primary Insured Term Rider of an additional $50,000.[4]

The Policy provides that a quarterly payment of $228.51 is

required to keep the Policy in force.[5]  Under the section of the

Policy entitled "Premium Payment," the following language

appears:

> *payments*
>
> Premiums for this policy are referred to as
> payments.  The planned payment and required
> payment are shown on Page 3.
>      *    *    *
> We will send you a reminder notice if you pay
> annually, semi-annually or quarterly.  You
> may also make a monthly automatic payment.

---

death by reason of the conditions precedent to reinstatement
having occurred.  At Count III, the plaintiff alleges that
by reason of the Policy's provisions and the actions of the
defendant, Mr. West reasonably believed that the coverage
provided by the Policy was in force at the time of his
death.  Lastly, at Count IV, the plaintiff avers that
defendant's refusal to pay her claim constitutes bad faith
within the meaning of 42 Pa.C.S. § 8371.

[2]    Amended Complaint, ¶¶ 3, 4 & Ex. A.

[3]    Amended Complaint, ¶ 5 & Ex. B.

[4]    Id.

[5]    Amended Complaint, Ex. B., p. 3.

>           *     *     *
>           Payments must be sent to our home office.
>           The amount you pay will affect the policy
>           value.  If you pay too little, the policy
>           will stop subject to the grace period.

Amended Complaint at Ex. B, p. 10.  The grace period allows a

policy holder to cure a missed premium payment without having the

Policy terminate.  The grace provision provides in relevant part:

>           *grace period*
>
>           [I]f on any monthly activity day the net
>           surrender value is less than the monthly
>           deduction for the current policy month, you
>           will be given a grace period of 61 days.
>           This policy will be in force during the grace
>           period.  If you do not make sufficient
>           payment by the end of the grace period, the
>           policy will stop.  If the insured dies during
>           the grace period, we will deduct any monthly
>           deductions from the amounts we pay.
>
>           We will send a written notice to the most
>           recent address we have for you and any
>           assignee at least 30 days prior to the day
>           coverage stops.

Amended Complaint at Ex. B, p. 10.

        In the event that the Policy terminates prior to death for

non-payment, the Policy provides:

>           *reinstatement*
>
>           If this policy stops prior to the death of
>           the insured and if this contract has not been
>           surrendered, this policy may be reinstated
>           provided you:
>
>           1.    Make your request within five years of
>                 the date the policy entered the grace
>                 period;

> 2.  Give us the proof we require that the insured is still insurable in the same payment class that the policy was issued;
>
> 3.  Pay an amount large enough to cover the unpaid monthly deductions for the grace period;
>
> 4.  Make a payment sufficient to keep the policy in force for 3 policy months; and
>
> 5.  Pay or ask us to reinstate any loan with interest as described in the loan interest provision.
>
> When this policy is reinstated, a new two-year contestable period will apply with respect to statements made in the application for reinstatement.

Amended Complaint at Ex. B, p. 11.

On February 17, 2004, Lincoln Benefit received from Mr. West a premium payment of $228.51 for the quarterly premium due February 1, 2004.[6] The next quarterly premium was due on May 1, 2004.[7] As was their practice, Lincoln Benefit sent Mr. West a Notice of Premium Due dated April 1, 2004, for the premium due May 1, 2004.[8] When Lincoln Benefit received no premium payment from Mr. West by May 3, 2004, the company sent him the standard "Grace Period Letter" advising that the May 1, 2004 premium was

---

[6]   Affidavit of Janet Dever, Claim Consultant ("Dever Aff.")(doc. 27-2 (Ex. F)), ¶ 8.

[7]   Id., ¶ 11.

[8]   Id.  Lincoln Benefit routinely sent to Mr. West similar advance notices of approaching payment due dates.  See Defendant's Concise Statement of Material Facts at Ex. F (doc. 27-2).

not paid in full.[9]  The Grace Period Letter further advised that Mr. West had sixty-one days, until July 3, 2004, to make full payment and if payment was not timely made, the Policy would terminate.[10]  Lincoln Benefit sent Mr. West a second notice of premium due for May 1, 2004, dated May 11, 2004.[11]

When Lincoln Benefit received no payment from Mr. West by July 3, 2004, the company sent another letter, dated July 5, 2004, advising him that the Policy had terminated for failure to pay the premium due.[12]  The letter further advised him that he could apply for reinstatement and included an application for reinstatement.[13]  The application stated that coverage would not start again until Lincoln Benefit approved the request for reinstatement and all required premiums and interest had been paid.[14]  As well, the application stated that should the application not be approved, any premiums tendered would be returned.[15]

---

[9]     Id., ¶ 12.

[10]    Id., ¶¶ 12, 13 & 14.  Lincoln Benefit sent similar letters
        to Mr. West over the course of the life of the Policy.  See
        Defendant's Concise Statement of Material Facts at Ex. F
        (doc. 27-2) and plaintiff's Deposition (doc. 27), p. 12.

[11]    Dever Aff., ¶ 15.

[12]    Id., ¶ 17.

[13]    Id.

[14]    Id., ¶ 18.

[15]    Id.

On July 19, 2004, Lincoln Benefit received from Mr. West a completed reinstatement application, dated July 15, 2004, and a check in the requested amount.[16]  In response to question 1(a) on the reinstatement application, Mr. West answered "Yes" to having "sought or received treatment or advice for (a) heart attack, disease of coronary arteries or other blood vessels, other heart disorder, high blood pressure, diabetes or stroke."[17]  Having answered "Yes" to this question required, *inter alia*, the Underwriting Department's review of Mr. West's medical records and a paramedical examination before any reinstatement decision would have been made.[18]  However, before Lincoln Benefit acted on the reinstatement application, Mr. West died on July 24, 2004, five days after the company received his application.[19]

The plaintiff notified Lincoln Benefit of Mr. West's death and requested payment of the death benefit of $100,000 in accordance with the terms of the Policy.[20]  Lincoln Benefit denied the plaintiff's claim on the grounds that since the Policy had terminated for non-payment of premium and since the company had not had an opportunity to review Mr. West's application for

---

[16]   Id., ¶¶ 20 & 24.

[17]   Id., ¶ 21.

[18]   Id., ¶ 22.

[19]   Id., ¶ 23; Amended Complaint, ¶ 12.

[20]   Amended Complaint, ¶ 13.

reinstatement and, thus, had not approved the application, Mr.
West had no life insurance policy in force with Lincoln Benefit
when he died.[21]

Presently before the Court are two motions: (1) Mrs. West's
Motion for Partial Summary Judgment (doc. 22), and (2) Lincoln
Benefit's Motion for Summary Judgment (doc. 23).

*Standard of Review*

Summary judgment is appropriate where "there is no genuine
issue as to any material fact" and "the moving party is entitled
to a judgment as a matter of law."  Fed. R.Civ. P. 56(c).  See
Marzano v. Computer Science Corp., 91 F.3d 497, 501 (3d Cir.
1996).  In deciding a motion for summary judgment the court must
view all inferences in a light most favorable to the non-moving
party.  Id., citing Armbruster v. Unisys Corp., 32 F.3d 768, 777
(3d Cir. 1994).  The non-moving party, however, may not rely on
bare assertions, conclusory allegations or mere suspicions to
support its claim but must demonstrate by record evidence the
meritorious nature of the claim.  Orsatti v. New Jersey, 71 F.3d
480, 484 (3d Cir. 1995).

*Discussion*

The primary argument made by Mrs. West is that because
Lincoln Benefit acknowledges receipt of the application for
reinstatement of insurance and payment therefor, Lincoln Benefit

---

[21]   Dever Aff., ¶¶ 27 & 28.

can avoid coverage only by clear and convincing evidence that Mr.
West had no reasonable basis for believing that he was purchasing
immediate coverage when he submitted the application and premium
on July 15, 2004.  Mrs. West asserts that Lincoln Benefit has not
presented and cannot present evidence to carry its burden of
proof and, therefore, she is entitled to summary judgment on
Counts I through III of the Amended Complaint.

As support for her argument, plaintiff relies on the case of
Collister v. National Life Ins. Co., 388 A.2d 1346 (Pa. 1978),
cert. denied, 439 U.S. 1089 (1979), and the decisions in two
other cases following Collister, to wit, Dibble v. Security of
America Life Ins. Co., 590 A.2d 352 (Pa. Super. 1991) and Malone
v. Guarantee Trust Life Ins. Co., 2005 WL 894810 (E.D.Pa.  Apr.
15, 2005).  Plaintiff's reliance on these cases is misplaced.

Notably, the aforementioned cases address applications for
new insurance and not an application for reinstatement of a
lapsed or terminated policy.  For example, in Collister, Mr.
Collister applied to Nationwide Life Insurance Company for life
insurance on September 24, 1972.  He submitted a two-month
premium payment on the above described insurance, which the
insurance company accepted.  In exchange for this payment the
insurance company's agent gave Mr. Collister a "conditional
receipt" which provided that Mr. Collister had to undergo a
medical examination before coverage would take effect.  Mr.

8

Collister was killed in an automobile accident approximately six weeks later.  At the time of his death Mr. Collister had not undergone a medical examination.  As well, the insurance company had not issued the policy applied for nor rejected his application.  The insurance company denied coverage, asserting that certain conditions, namely the medical examination, had not been fulfilled.

Notwithstanding the fact that the conditional receipt stated the insurance would not go into effect until the medical examination had been completed, the Pennsylvania Supreme Court found that at the time the insurance company accepted Mr. Collister's application for insurance and the first premium payment therefor, a temporary insurance contract was formed that provided coverage from the period of time extending from the acceptance of the premium deposit until the insurance company either rejected the application because of uninsurability or accepted the application and issued the policy for which Mr. Collister applied.  388 A.2d at 1348.  The court reasoned that to find otherwise would mean Collister paid a premium in return for nothing and held that,

> [i]n situations where the circumstances of
> the transaction do not indicate that the
> insurer intended to provide interim
> insurance, but nevertheless show that the
> insurer accepted payment of the first premium
> at the time it took the application, it is
> then up to the insurer to establish by clear
> and convincing evidence that the consumer had

> no reasonable basis for believing that he or she was purchasing immediate insurance coverage.

> The reasonable expectation of the insured is the focal point of the insurance transaction involved here.

Id. at 1353.  The court then determined that Mr. Collister could have reasonably believed that he had purchased immediate coverage since there was no evidence the agent told him he was paying money upon application for coverage that would not begin until he completed the medical examination.  Id. at 1354.  As well, the court concluded that he could have reasonably perceived the "conditional receipt" as merely a receipt given to evidence payment of the first two months premium, with the payment of the premium marking the culmination of the negotiation and the beginning of the performance of the contract.  Id.

In reaching its decision, the court reviewed other cases involving the issuance of a new policy and a "conditional receipt."  From these cases the court found the following factors weighed in favor of coverage: the applicant was entitled to receive some coverage in return for his payment of the initial premium; the carrier immediately benefitted from its collection of the premium while the application was still pending; and the use of the "conditional receipt" implied that insurance had been

bound, at least temporarily, pending further review of the

application.  Id. at 1348-56.[22]

None of the aforementioned cases, however, discusses whether

the test set forth in Collister, referred to as the "totality of

the circumstances" test, applies to the application for

reinstatement of a lapsed or terminated policy.  Indeed, it

appears that where reinstatement is involved, a different test

applies.

A reinstatement provision contemplates the making of a new

contract between the parties, which the insurer is not obligated

to do unless it is satisfied that the original risk is still

insurable.  Hogan v. John Hancock Mut. Life Ins. Co., 195 F.2d

834, 837 (3d Cir. 1952).

> Upon receipt of a reinstatement application,
> the insurer has the right to require further
> evidence of insurability, so long as it acts
> reasonably in so doing, or it may agree to
> reinstate upon the basis of the information
> in the application itself. ... In either
> event, reinstatement is never effectuated
> until the insurer acts on the application.

Id. (emphasis added); see also Glezerman v. Columbian Mut. Life

Ins. Co., 944 F.2d 146, 153-54 (3d Cir. 1991).

An insurer has a reasonable amount of time in which to

demand proof of insurability and then decide whether to reinstate

the policy.  Glezerman, 944 F.2d at 153.  As the Third Circuit

---

[22]     We do not address the facts of Dibble and Malone since they are
very similar to those in Collister and follow Collister without
further analysis.

recognized in Glezerman, "[t]he benchmark for determining a reasonable period may be a period specified by the insurance contract." Id. at 154.  The Glezermans' policy, however, did not specify such a period.  The insurance company had taken sixty-seven days to evaluate and eventually deny the reinstatement application in Glezerman.  Because the policy was silent on the issue, the Circuit looked to Hogan, where the court had held it was reasonable to act on a reinstatement application within the sixty-day period specified in the policy.  Hogan, 195 F.2d at 838.  Finding no evidence that the insurance company "acted in a dilatory or even lackadaisical manner," the Glezerman court held the company acted within a reasonable period of time in responding to the Glezermans' application within sixty-seven days.[23]

In the instant case, the Policy is silent as to a time period within which Lincoln Benefit must act on a reinstatement application.  The company received the application and check on July 19, 2004.  Mr. West died five days later on July 24, 2004.  Mrs. West notified Lincoln Benefit of her claim on July 26, 2004.  On July 30, 2004, Lincoln Benefit tendered a check back to Mrs. West for the full amount of the reinstatement premium and denied her claim.  Lincoln Benefit thus held the tendered application

---

[23]     Although Glezerman was decided under New Jersey law, the Court specifically cited and followed Pennsylvania law, as set forth in the Hogan case.  Glezerman, 944 F.2d at 154.

and premium for eleven days.  However, there is no evidence that in so doing Lincoln Benefit acted contrary to any express provision in the Policy or otherwise.  Lincoln Benefit cashed Mr. West's check as was standard practice.[24]  Further, at the time of Mr. West's death, <u>i.e.</u>, five days after receipt of the reinstatement application, Lincoln Benefit had not completed its review of his medical records as necessitated by information he provided in the application concerning his medical condition, in order to satisfy itself that the original risk was still insurable.  Under these circumstances, it cannot be said that Lincoln Benefit did not act within a reasonable amount of time on the reinstatement application.

In our view, the rationale of <u>Collister</u> cannot properly be applied to the circumstances here involving an application for reinstatement of insurance coverage.  As Lincoln Benefit correctly notes, Mr. West did not pay a premium in return for nothing.  Rather, Lincoln Benefit afforded him life insurance coverage between May 1, 2004 and July 3, 2004, even though he failed to pay the quarterly premium due on May 1, 2004.  The payment made with his reinstatement application simply brought his account current and did not bind Lincoln Benefit to any reinstated coverage.

---

[24]    Dever Aff., ¶ 25.

In summary, the clear and unambiguous language in the Policy provided notice to Mr. West of premiums due and that termination would result if premiums were not paid, subject to the grace provision.  As well, on numerous occasions Lincoln Benefit advised Mr. West by letter of premiums due and the consequences for failing to make the required payments.  Upon his failure to pay the May 1, 2004 premium, Lincoln Benefit afforded him a sixty-one day grace period to pay the premium and upon his failure to do so, Lincoln Benefit terminated the Policy.  With this knowledge, Mr. West made an application to reinstate the Policy and submitted the required premium.  The evidence of record demonstrates that there were conditions to be met, e.g., a review of medical records and a physical examination, among others, before Lincoln Benefit could make a determination on the reinstatement application.  The evidence also shows that as of the date of his death, these conditions had not been fulfilled. See Fisher v. American Nat. Ins. Co., 241 F.2d 175, 177 (3d Cir. 1957)(under Pennsylvania law the burden is on the beneficiary to prove compliance with all the conditions precedent to reinstatement).  As a result, Lincoln Benefit had not acted on the application and, under Pennsylvania law, reinstatement was never effected.  Hogan, 195 F.2d 837.  Therefore, because there

was no valid Lincoln Benefit policy in effect at the time of Mr. West's death, the company correctly denied coverage.[25]

Plaintiff's secondary argument is that Lincoln Benefit failed to comply with the grace period notice provision of the Policy, that is, to provide written notice at least thirty days prior to the date coverage stops.  She argues that Lincoln Benefit should not have the benefit of the mail box rule under the circumstances presented here since there is no direct evidence that the notice in question was generated and/or mailed in the ordinary course of business.  As set forth in <u>Com., Dept. of Transp. v. Brayman Const. Corporation-Bracken Constr. Co. ("Brayman")</u>, 513 A.2d 562 (Pa.Cmwlth. 1974),

> The [mailbox] rule applies only when there is evidence that the item was mailed.  It is true that evidence of actual mailing is not required.  Instead, "when a letter has been written and signed in the usual course of business and placed in the regular place of mailing, evidence of the *custom* of the establishment *as to the mailing* of such letters is receivable as evidence that it was duly mailed."

---

[25]  Even if the <u>Collister</u> totality of the circumstances test were to apply in this case, which we have found it does not, plaintiff cannot meet her burden to show that there is no genuine issue of material fact as to whether, as a matter of law, Mr. West reasonably expected that the Policy was reinstated upon submission of the application and premium payment.  There is no evidence of record to show what Mr. West believed or expected.  The testimony by Mrs. West demonstrates that she cannot state whether Mr. West read any part of the Policy nor whether he had any expectations - reasonable or otherwise - at the time he submitted the application for reinstatement.  <u>See</u> Plaintiff's Depo, pp. 8, 19, 41-42.

513 A.2d at 566 (citations omitted).  See also, Sheehan v.

W.C.A.B. (Supermarkets General), 600 A.2d 633, 636 (Pa. Cmwlth.

1991)("Under the mailbox rule, proof that a letter was properly

mailed raises a rebuttable presumption that the mailed item was,

in fact, received [and] testimony denying the receipt of the item

mailed does not, in and of itself, nullify the presumption that

the letter was received.").  As well, "proof of office ...

procedures without proof that the letter was written in the

regular course of business and was placed in the usual place of

mailing does not bring the mailbox rule into play."  Brayman, 513

A.2d at 566.  Based on the undisputed facts in the instant case,

however, plaintiff's argument must fail.

It is uncontroverted that in the normal course of its

business, Lincoln Benefit issues system-generated form

correspondence from its Dallas, Texas office, when triggered by

pre-defined activities.  System-generated correspondence includes

all premium due notices (billing notices), grace letters and

termination letters.  These letters are then inserted into

envelopes with computer-generated mailing and return address

labels, sealed and postage affixed.  Thereafter, the mail is

placed on a rack where an on-site United States Postal Service

employee accepts the mail and delivers it to the local post office for mailing.[26]

The plaintiff concedes that Mr. West failed to pay the May 1, 2004, premium due.[27]  She does not contest that Lincoln Benefit created the correspondence at issue, that is, the May 3, 2004 grace period letter or the related notices of premium due. Based upon Mr. De Coursey's testimony, the correspondence at issue would not have been generated and mailed absent Mr. West's failure to pay the premium due and, indeed, was generated and mailed to the correct address as pre-programmed.  Thus, Lincoln Benefit is entitled to the presumption that the correspondence was received by Mr. West.

Although Mrs. West claims not to have seen these letters and notices, despite having previously seen several others sent by Lincoln Benefit upon Mr. West's failure to timely submit premiums due, she cannot state whether Mr. West received them or not.  As a result, she has not rebutted the presumption.  Thus, Lincoln Benefit has established that it complied with the grace period notice provision of the Policy.  Accordingly, Lincoln Benefit is entitled to summary judgment.

---

[26]    Affidavit of Randal S. De Coursey, Senior Vice President, Lincoln Benefit (doc. 27, Ex. C).  See also Exs. D-G to the Dever Aff. (doc. 27-2).

[27]    Plaintiff's Deposition (doc. 27), pp. 45-46.

Finally, Lincoln Benefit is entitled to summary judgment on plaintiff's claim of bad faith.  In order to establish a claim for bad faith, the insured has the burden of proving "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis."  <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230, 233 (3d Cir. 1997).  As discussed above, because Mr. West did not have a policy in force with Lincoln Benefit when he died, the insurer correctly denied coverage and, therefore, could not have acted in bad faith.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:   22 May, 2006

cc:  Hon. Donetta W. Ambrose
     Chief United States District Judge

18

```
John W. Jordan, IV, Esquire
Gaca, Matis, Baum & Rizza
444 Liberty Avenue
Suite 300
Pittsburgh, PA 1522-5404

Scott D. Goldman, Esquire
Dinsmore & Shohl
330 Grant Street
Suite 2415, Grant Building
Pittsburgh, PA 15219

Alan H. Abes, Esquire
Dinsmore & Shohl
255 E. 5th Street, Suite 1900
Cincinnati, OH 45202
```

Further, it appears that under Pennsylvania law the burden is on the beneficiary to prove compliance with all the conditions precedent to reinstatement.  <u>Fisher v. American Nat. Ins. Co.,</u> 241 F.2d 175, 177 (3d Cir. 1957).